# United States Court of Appeals for the Federal Circuit

_____

**SWEET HARVEST FOODS, EXPORT PACKERS COMPANY LTD., HONEY HOLDING I, LLP, DBA HONEY SOLUTIONS, SUNLAND TRADING, INC., NATIONAL HONEY PACKERS & DEALERS ASSOCIATION,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, AMERICAN HONEY PRODUCERS ASSOCIATION, SIOUX HONEY ASSOCIATION,**
*Defendants-Appellees*

_____

2024-1370, 2024-1371

_____

Appeals from the United States Court of International Trade in Nos. 1:22-cv-00188-LMG, 1:22-cv-00189-LMG, 1:22-cv-00191-LMG, 1:22-cv-00192-LMG, 1:22-cv-00194-LMG, Senior Judge Leo M. Gordon.

_____

Decided:  October 15, 2025

_____

RON KENDLER, White & Case LLP, Washington, DC, argued for all plaintiffs-appellants.  Plaintiff-appellant National Honey Packers & Dealers Association also represented by JAY CHARLES CAMPBELL, GREGORY J. SPAK.  Plaintiffs-appellants Sweet Harvest Foods, Export Packers

Company Ltd., Honey Holding I, LLP, Sunland Trading, Inc. also represented by GREGORY HUSISIAN, Foley & Lardner LLP, Washington, DC.

MICHAEL HALDENSTEIN, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee United States. Also represented by ANDREA C. CASSON.

MELISSA M. BREWER, Kelley Drye & Warren, LLP, Washington, DC, argued for defendants-appellees American Honey Producers Association, Sioux Honey Association. Also represented by KATHLEEN CANNON, ROBERT ALAN LUBERDA.

_____

Before LOURIE, TARANTO, and CUNNINGHAM, *Circuit Judges*.

TARANTO, Circuit Judge.

In April 2021, the American Honey Producers Association and Sioux Honey Association (collectively, Petitioners) petitioned the U.S. Department of Commerce and the International Trade Commission under 19 U.S.C. §§ 1673–1673h to impose antidumping duties on raw honey imported from five countries, including the Socialist Republic of Vietnam. In the investigation initiated in response, the Commission and then Commerce made affirmative preliminary determinations supporting imposition of such duties, and the U.S. Customs and Border Protection (Customs) suspended liquidation of entries of the covered merchandise from Vietnam (and required associated cash deposits or other security), while the investigation moved forward to the final determinations, which were also affirmative. In the ordinary case, the suspension date is when Commerce published its affirmative preliminary determination, and the ultimate antidumping duties apply retroactively to entries made on or after that suspension

date. 19 U.S.C. § 1673e(b). But the statute provides for an even earlier suspension and/or applicability date (up to 90 days earlier) if there are specified "critical circumstances"—as relevant here, a post-*petition* surge of imports before the otherwise-governing suspension/applicability date, which could lower demand from domestic suppliers supposed to be protected by antidumping duties. *See* 19 U.S.C. §§ 1673b(e), 1673d(a)(3), (b)(4)(A), (c)(4). Commerce and the Commission found such circumstances here and backdated the suspension and ultimate imposition of duties to entries made starting 90 days before Commerce published its preliminary determination. *See Raw Honey from Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 87 Fed. Reg. 35,501, 35,501–04 (Int'l Trade Comm'n June 10, 2022) (*June 2022 Antidumping Duty Order*). That backdating based on "critical circumstances" is at issue here.

Sweet Harvest Foods, Export Packers Co., Honey Holding I, LLP, Sunland Trading, Inc., who import raw honey from Vietnam, and the National Honey Packers & Dealers Association—collectively, "Sweet Harvest"—filed an action in the Court of International Trade (Trade Court) to challenge the Commission's final affirmative critical-circumstances determination under 19 U.S.C. § 1673d(b)(4)(A). The Trade Court sustained the Commission's determination. *Sweet Harvest Foods v. United States*, 669 F. Supp. 3d 1346 (Ct. Int'l Trade 2023). We now affirm.

## I

### A

Under the general legal framework relevant here, when an interested party submits a petition on behalf of an industry alleging that "foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value" and that a domestic industry is, or is threatened to be, materially injured, 19 U.S.C. § 1673, Commerce must evaluate within 20 days whether to initiate an

investigation, *id.* § 1673a(b), (c)(1)(A).  During an investigation, Commerce (the "administering authority") is to decide the issue of sale for less than fair value (dumping), while the Commission is to decide the issue of material injury.  *Id.* §§ 1673b, 1673d.  Each agency is assigned a role at each of two stages: preliminary and final.  At the preliminary-determination stage, the Commission's determination precedes any Commerce determination.  *Id.* § 1673b.  At the final-determination stage, the sequence is reversed.  *Id.* § 1673d.  If affirmative final determinations of dumping and material injury are made, Commerce is to impose dumping duties on the subject merchandise to offset the underpricing.  *Id.* §§ 1673, 1673e(a).

Each step of the process leading to an ultimate imposition of duties takes time.  Many months may be required for the Commission and Commerce to make their preliminary determinations.  *See id.* § 1673b(a)–(c).  Many additional months may be required for Commerce and the Commission thereafter to make their final determinations.  *See id.* § 1673d(a)(1)–(2), (b)(2)–(3).  During that process, imports of the at-issue merchandise typically continue.

Congress has long provided for application of ultimately imposed duties to many such imports that were made during the investigation.  In the ordinary situation, if the agencies make affirmative preliminary determinations, Commerce (which goes second at this stage) is to direct Customs to suspend (*i.e.*, postpone) the liquidation of (*i.e.*, the final determination of duties owed for) entries made on or after the date of Commerce's published affirmative preliminary determination.  *See id.* § 1673b(d)(2)(A); *see also* 19 C.F.R. §§ 159.1, 159.51, 351.102(b)(50) (explaining liquidation and suspension of liquidation).  Commerce also is to direct Customs to obtain a cash deposit, bond, or other security for each entry, based on Commerce's preliminary estimates of the amount by which exporters have been selling subject merchandise below fair value.  19 U.S.C. § 1673b(d)(1)(B).  The suspension and security

reflect, and enable concrete enforcement of, the fundamental statutory rule that, if final determinations are affirmative, the effective date of the ultimate duty requirement is the suspension date: All entries on or after that date are subject to the imposed duty. *Id.* § 1673e(b).

This case involves statutory provisions for an earlier suspension and/or applicability date to address the potential for importers' harming of domestic suppliers through a surge of imports during the period of the investigation before Commerce published its preliminary determination—imports that would not be subject to suspension, security, or the ultimate duty under the ordinary rules just summarized. These provisions address "critical circumstances" justifying an earlier suspension and/or applicability date. The provisions originated in the Trade Agreements Act of 1979, Pub. L. No. 96-39, § 101, 93 Stat. 144, 165, 170–71 (1979)—the version discussed in *ICC Industries, Inc. v. United States*, 812 F.2d 694, 699–700 (Fed. Cir. 1987)— and were modified in the Trade and Tariff Act of 1984, Pub. L. No. 98-573, § 605(b), 98 Stat. 2948, 3028–29 (1984), the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, §§ 1323–24, 102 Stat. 1107, 1199–1201 (1988), and again in the Uruguay Round Agreements Act (URAA), Pub. L. No. 103-465, §§ 214–15, 219, 108 Stat. 4809, 4850–53, 4857 (1994). *See also* Miscellaneous Trade and Technical Corrections Act of 1996, Pub. L. No. 104-295, § 20(b), 110 Stat. 3514, 3527 (1996). The current provisions cited by the parties are codified at 19 U.S.C. § 1673b(e), which applies before final determinations, and at 19 U.S.C. § 1673d(a)(3), (b)(4)(A), (c)(4), which apply to final determinations.[1]

---

[1]    The parties do not discuss 19 U.S.C. § 1673a(e), enacted in 1988, *see* Pub. L. No. 100-418, § 1324(b)(1), 102 Stat. at 1199–1200, which authorizes Commerce, if it has

Under section 1673b(e), before a final determination, Commerce, if presented with a timely request by a petitioner, must make a determination whether "there is a reasonable basis to believe or suspect" both (A) that either "there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise" or certain actual or constructive knowledge of dumping and injury, *id.* § 1673b(e)(1)(A), and (B) that "there have been massive imports of the subject merchandise over a relatively short period," *id.* § 1673b(e)(1)(B).[2] If Commerce makes an affirmative determination on that issue, it is to backdate any suspension already ordered by 90 days (but no earlier than the date of the Federal Register notice of initiation of the investigation). *Id.* § 1673b(e)(2).

Section 1673d addresses "critical circumstances" at the stage of final determinations by Commerce and the Commission. If Commerce makes an affirmative final determination of dumping, it must make findings about whether both conditions identified in section 1673b(e)(1)(A)–(B) are present (not just whether there is a reasonable basis to believe or suspect their presence). *Id.* § 1673d(a)(3). As relevant here, it must determine if "there have been massive imports of the subject merchandise over a relatively short

_____

a reasonable basis to suspect certain facts that are part of the later-identified "critical circumstances" inquiry, to obtain information from Customs.

    [2]   Commerce has promulgated regulations indicating that the statutory "relatively short period" is "normally . . . the period beginning on the date the proceeding begins and ending at least three months later," 19 C.F.R § 351.206(i), and also listing factors that Commerce "normally" considers in determining the existence of "massive imports," *id.* § 351.206(h). *See also id.* § 351.102(b)(40) ("proceeding" begins with petition as relevant here).

period." *Id.* § 1673d(a)(3)(B). If Commerce finds such presence under subsection (a)(3), then the Commission, in turn, must make a finding as to

> whether the imports subject to [Commerce's] affirmative determination under subsection (a)(3) are likely to undermine seriously the remedial effect of the antidumping duty order to be issued under section 1673e of this title.

*Id.* § 1673d(b)(4)(A)(i). In making that finding, the Commission

> shall consider, among other factors it considers relevant—
>
> (I) the timing and the volume of the imports,
>
> (II) *a rapid increase in inventories of the imports*, and
>
> (III) any other circumstances indicating that the remedial effect of the antidumping order will be seriously undermined.

*Id.* § 1673d(b)(4)(A)(ii) (emphasis added as relevant for the challenged interpretation).

### B

### 1

On April 21, 2021, petitioners filed a petition under 19 U.S.C. § 1673a(b) seeking initiation of an antidumping-duty investigation of imports of raw honey from Vietnam and other countries, as reflected in the Commission's publication of April 27, 2021. *See Raw Honey from Argentina, Brazil, India, Ukraine, and Vietnam; Institution of Antidumping Duty Investigations and Scheduling of Preliminary Phase Investigations*, 86 Fed. Reg. 22,265, 22,265–66 (Int'l Trade Comm'n Apr. 27, 2021); J.A. 564. On May 11, 2021, Commerce initiated the requested investigation under 19 U.S.C. § 1673a(c). *Raw Honey from Argentina,*

*Brazil, India, Ukraine, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 86 Fed. Reg. 26,897, 26,897–26,902 (Dep't of Commerce May 18, 2021) (*Commerce Initiating Investigation*). "Raw honey is honey as it exists in the beehive or as obtained by extraction, settling and skimming, or coarse straining," from which most of the pollen has been removed. *Id.* at 26,902.

The Commission made an affirmative preliminary determination of material injury under 19 U.S.C. § 1673b(a) on June 7, 2021, publishing it in the Federal Register three days later. *Raw Honey from Argentina, Brazil, India, Ukraine, and Vietnam*, 86 Fed. Reg. 30,980, 30,980–81 (Dep't of Commerce June 10, 2021). More than five months later, on November 17, 2021, Commerce made—and on November 23 published—an affirmative preliminary determination of dumping of raw honey from Vietnam under 19 U.S.C. § 1673b(b)–(c), while also granting itself a 135-day extension for its final determination under 19 U.S.C. § 1673d(a)(2). *Raw Honey from the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 Fed. Reg. 66,526, 66,526-28 (Dep't of Commerce Nov. 23, 2021) (*Commerce Prelim. Dumping Determination*). As a result of the two affirmative preliminary determinations, Commerce directed Customs under 19 U.S.C. § 1673b(d), effective November 23, 2021, to suspend liquidation of entries of the covered merchandise from Vietnam and to require cash deposits based on Commerce's estimates of the margin by which the dumped merchandise was being undersold. *Id.* at 66,526–27.

Shortly thereafter, on December 3, 2021, petitioners amended their petition to allege, under 19 U.S.C. § 1673b(e), the existence of critical circumstances concerning imports of raw honey from Vietnam. *See Raw Honey from the Socialist Republic of Vietnam: Preliminary*

*Affirmative Determination of Critical Circumstances in the Less-Than-Fair-Value Investigation*, 87 Fed. Reg. 2,127, 2,127–28, 2,127 n.2 (Dep't of Commerce Jan. 13, 2022) (*Commerce Prelim. Critical Circumstances Determination*). On December 30, 2021, Commerce made—and on January 13, 2022, published—an affirmative preliminary critical-circumstances determination under 19 U.S.C. § 1673b(e)(1)(A)–(B), finding constructive knowledge of dumping and material injury and massive imports over a relatively short period shown by comparing imports between October 2020 and April 2021 with imports between May 2021 and November 2021. *Prelim. Commerce Critical Circumstances Determination*, 87 Fed. Reg. at 2,128–30. Those periods correspond to the six months before the April 21, 2021 petition and the six months between the filing of the petition and Commerce publishing its affirmative preliminary dumping determination in late November 2021—consistent with a Commerce practice of using six-month periods for analysis. *See, e.g., Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 432 F.3d 1363, 1365 (Fed. Cir. 2005); *Commerce Prelim. Critical Circumstances Determination*, 87 Fed. Reg. at 2,129 & n.17 (explaining choice of comparison period and collecting cases). Commerce thus directed Customs under 19 U.S.C. § 1673b(e)(2) to suspend liquidation of unliquidated entries retroactively to 90 days before the November 23, 2021 publication of Commerce's preliminary dumping determination, thus covering any unliquidated entries (or withdrawals from a warehouse) made on or after August 25, 2021, *Commerce Prelim. Critical Circumstances Determination*, 87 Fed. Reg. at 2,130, and to require a cash deposit on that merchandise, *Raw Honey from the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Critical Circumstances in the Less-Than-Fair-Value Investigation; Correction*, 87 Fed. Reg. 7,800, 7,800 (Dep't of Commerce Feb. 10, 2022).

On April 7, 2022, Commerce made—and on April 14 published—its affirmative final determination of dumping under 19 U.S.C. § 1673d(a)(1). *Raw Honey from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 87 Fed. Reg. 22,184, 22,184–85 (Dep't of Commerce Apr. 14, 2022) (*Commerce Final Determinations*). In the same document, Commerce made an affirmative final determination of critical circumstances under 19 U.S.C. § 1673d(a)(3), using the same periods for analysis as those it had used in its preliminary determination. *Id*. at 22,185.

The Commission made its final determination of material injury under 19 U.S.C. § 1673d(b)(1)–(2) on May 27, 2022, publishing it in the Federal Register on June 3, 2022. *Raw Honey from Argentina, Brazil, India, and Vietnam*, 87 Fed. Reg. 33,831, 33,831 (Int'l Trade Comm'n June 3, 2022) (*Commission Final Determinations*). In the same document, the Commission made an affirmative final determination of critical circumstances under 19 U.S.C. § 1673d(b)(4)(A). *Commission Final Determinations*, 87 Fed. Reg. at 33,831 & n.3. The Commmission's determinations, together with Commerce's final determination, resulted in a June 2022 antidumping-duty order against raw honey imports from Vietnam, applicable to merchandise entered or withdrawn from a warehouse on or after August 25, 2021, under 19 U.S.C. § 1673e(a), (b)(1). *June 2022 Antidumping Duty Order*, 87 Fed. Reg. at 35,501–02.

2

In the Views of the Commission (articulated by the majority), the Commission reported the analysis underlying its affirmative critical-circumstances determination. Raw Honey from Argentina, Brazil, India, and Vietnam, Inv. Nos. 731-TA-1560, 731-TA-1561, 731-TA-1562, 731-TA-1564 (Final), USITC Pub. 5327, 2022 WL 2072551, at *25–30 (May 1, 2022) (*Views*). The Commission selected its

period of investigation as the "post-petition period" of May 2021 through October 2021 following the April 21, 2021 petition and a "pre-petition period" of November 2020 to April 2021, consistent with the Commission's typical practice of using post-petition periods that are no more than six months and setting Commerce's date of suspension as close as possible to the outer bound of that period. *Id.* at *27. The Commission found that neither petitioners nor Sweet Harvest had challenged that choice of periods. *Id.* at *27 n.280.

The Commission addressed all three factors expressly identified in 19 U.S.C. § 1673d(b)(4)(A)(ii). *Views*, at *25. First, the Commission determined that the timing and volume of imports favored an affirmative determination, based on analyses of monthly data during the period of investigation. *Id.* at *28–29. Second, the Commission found a rapid increase in the "inventories of the imports," 19 U.S.C. § 1673d(b)(4)(A)(ii)(II), favoring an affirmative determination. *Views*, at *29. The Commission found, for example, that aggregate inventories nearly tripled in volume from April 30, 2021, to October 31, 2021. *Id.* It also found that demand for raw honey is "relatively inelastic," so it is "likely that the increased imports and inventories of subject imports from Vietnam remained in inventory somewhere in the supply chain and were not immediately consumed." *Id.* at *29 n.305. For those reasons, the Commission determined that inventories of the imports were "large and increased substantially in the post-petition period" even if "importers" themselves "ha[d] . . . sold off much of their inventory," while adding that the large inventories were "likely to place downward pressure on prices until [they were] consumed by end users," *Views*, at *30, and noting evidentiary problems with petitioners' evidence, J.A. 542 n.306; *see Sweet Harvest*, 669 F. Supp. 3d at 1357–58 (quoting much of the footnote). Third, the Commission determined that the circumstances found a serious undermining of the remedial effect of the antidumping-

duty order, noting that monthly price data demonstrated that imports from Vietnam continued to undersell domestic raw honey during the second and third quarters of 2021. *Views*, at *25, 29. The Commission summarized:

> Given the volume and timing of imports, including the sharp increase in the volume of post-petition imports prior to the retroactive liability period under the critical circumstances provision, the rapid increase in and size of inventories, and the continued underselling of the domestic like product by wide margins, we find that the remedial effect of the antidumping duty order with respect to subject imports from Vietnam will likely be seriously undermined. We therefore make an affirmative critical circumstances finding with respect to subject imports from Vietnam subject to Commerce's affirmative determination of critical circumstances.

*Id.* at *30.

Commissioner Johanson dissented from the critical-circumstances determination. *Views*, at *30 (Johanson, C., dissenting). He focused on the consumption of imports after November 2021 and the growth in the U.S. economy, including the U.S. raw honey industry, since the petition was filed in April 2021. *Id.* He also reasoned that the "likely to undermine seriously" standard in 19 U.S.C. § 1673d(b)(4)(A) was not satisfied because, in his view, the increase in imports following the petition had been "largely if not entirely eliminated" by the time of the May 2022 antidumping-duty order. *Id.*

Sweet Harvest sought review of the Commission's critical-circumstances determination in the Trade Court. *Sweet Harvest*, 669 F. Supp. 3d at 1348. The "fundamental theme" of Sweet Harvest's challenge was that "the [Commission] focused on the incorrect period to evaluate whether critical circumstances existed" because "the [Commission] failed to consider or afford adequate weight to the

most recent data on the record[.]" *Id.* at 1350. The Trade Court rejected Sweet Harvest's challenge, concluding that the Commission's affirmative critical-circumstances determination was in accordance with law, *id.* at 1356, and supported by substantial evidence, *id.* at 1363.

Sweet Harvest timely appealed, challenging the Trade Court's upholding of the Commission's critical-circumstances determination. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

We review decisions of the Trade Court by "apply[ing] anew the same standard used" by the Trade Court. *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (alteration in original) (quoting *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380 (Fed. Cir. 2008)). We uphold the Commission's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). We resolve questions of statutory interpretation by determining the "best reading" of the statute. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1035 (Fed. Cir. 2021) (quoting *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951)).

## A

Sweet Harvest's principal argument, perhaps even its entire challenge, rests on an assertion about statutory interpretation. In particular, Sweet Harvest argues that the Commission's critical-circumstances analysis was temporally misfocused. According to Sweet Harvest, the

statutorily required standard requires an identified import surge to have an adverse impact *after issuance* of the final antidumping-duty order, and it is not enough to find an adverse impact (of an import surge) starting on the date as of which the ultimately imposed duties would apply without a critical-circumstances determination, namely, the date of suspension of liquidation (and cash deposit or other security requirements) triggered by publication of Commerce's affirmative preliminary dumping determination.  For this case, Sweet Harvest's argument is that the statute requires a determination about undermining the June 2022 Antidumping Duty Order effect after that order issued and that a determination of undermining the duties as of the initial November 23, 2021 suspension date is legally insufficient. On this basis, Sweet Harvest faults the Commission for not attending to evidence of facts, particularly of inventory levels, from the time just before the June 2022 order.  Sweet Harvest Opening Br. at 20–33; *see also id.* at 36 (seemingly making same assertion as the basis for its substantial-evidence challenge).  We reject Sweet Harvest's statutory-interpretation position.

The pertinent statutory provision, 19 U.S.C. § 1673d(b)(4)(A)(i), kicks in if Commerce has made an affirmative determination of critical circumstances under subsection (a)(3) of section 1673d, as Commerce did here, finding in particular that "there have been massive imports of the subject merchandise over a relatively short period," *id.* § 1673d(a)(3)(B).  If Commerce has made that determination, then the Commission is to determine whether "the imports subject to the affirmative determination under subsection (a)(3) are likely to undermine seriously the remedial effect of the antidumping duty order to be issued under section 1673e." *Id.* § 1673d(b)(4)(A)(i).  Contrary to Sweet Harvest's position, that provision does not demand a determination focused on the time after the antidumping-duty order issues.

The "imports subject to" the subsection (a)(3) determination are the "massive imports of the subject merchandise" that have occurred "over a relatively short period." The Commission is to determine whether they are likely to undermine seriously "the remedial effect of" the antidumping-duty order. The identified remedial effect starts with the date specified by statute for when entries are subject to the eventually imposed duties—which Congress has declared is the earlier suspension date when, as in this case, there has been a suspension based on a published affirmative preliminary dumping determination. 19 U.S.C. § 1673e(b). Here, that was initially November 23, 2021 (before the suspension date was itself backdated in January 2022).

Domestic suppliers are to be protected from dumped imports as of that date. And a surge of imports before *that* date plainly could undermine that protection by diminishing demand for their goods, whether because imported merchandise (not subject to the duty) has been stockpiled for sale after that date or because such merchandise has already been sold (and is in purchasers' inventories) so as to diminish demand for new merchandise after that date. Sweet Harvest's position, requiring that the analysis focus on the publication date of the eventual antidumping-duty order, is contrary to this straightforward reading of the key statutory language. And nothing in the additional factor-identification language of section 1673d(b)(4)(A)(ii) says or suggests anything different about the relevant date for the inquiry into increases of imports or inventories.

This reading is supported by the Statement of Administrative Action (SAA) for the URAA, which enacted the current language of the pertinent critical-circumstances provisions. The SAA is "an authoritative expression by the United States concerning the interpretation and application of the [URAA] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d). The SAA states that a

"relatively short period of time" in assessing critical cir-
cumstances is a period "prior to the suspension of liquida-
tion." Statement of Administrative Action, H.R. Doc. No.
103–316, vol. 1 at 876 (1994).

Our reading is also supported by our 1987 decision in
*ICC Industries*, 812 F.2d 694, which addressed the original
1979 version of 19 U.S.C. § 1673d(a)(3) and (b)(4)(A). We
quoted the statement in the House Report that section
1673d(b)(4)(A) was designed to

> deter exporters whose merchandise is subject to an
> investigation from circumventing the intent of the
> law by increasing their exports to the United States
> during *the period between initiation of an investi-
> gation and a preliminary [dumping] determination
> by [Commerce].*

H.R. Rep. No. 96-317, at 63 (1979) (emphasis added); *see
ICC Industries*, 812 F.2d at 699–700. We added: "The im-
position of retroactive antidumping duties is to prevent the
injury from recurring or continuing and inhibits injury by
importers who attempt to circumvent the antidumping
laws by shipping in massive imports after an antidumping
petition is filed . . . but before suspension of liquidation can
occur." *ICC Industries*, 812 F.2d at 700. The URAA refined
the language of section 1673d(b)(4)(A) that was at issue in
*ICC Industries*—which directed the Commission to make a
finding "whether the material injury is by reason of mas-
sive imports" as described "to an extent that, in order to
prevent such material injury from recurring, it is necessary
to impose the duty imposed by section 1673 of this title ret-
roactively on those imports." Pub. L. No. 96-39, 93 Stat. at
171, quoted in *ICC Industries*, 812 F.2d at 696. But noth-
ing in the now-governing language alters the evident and
recognized purpose.

We therefore reject the proposed statutory interpreta-
tion on which Sweet Harvest rests the bulk, perhaps all, of

its challenge to the Trade Court's affirmance of the Commission.

## B

Sweet Harvest argues that the Commission's critical-circumstances determination is not supported by substantial evidence. Sweet Harvest Opening Br. at 34–44. It is not clear whether Sweet Harvest intends the substantial-evidence challenge itself to rest on the statutory-interpretation position as to timing that we have rejected. *See id.* at 36 (evidence needed to determine "what impact [imports] are likely to have at the time the [antidumping-duty] order is issued"). In any event, with the statutory-interpretation position rejected, we see no lack of substantial evidence for the Commission's determination. Sweet Harvest challenges only the Commission's determination that the surge in imports (before Commerce published its preliminary determination) was likely to place downward pressure on prices regardless of where imports were in the supply chain. *Id.* at 37–41; *see Views*, at *30. That finding was a reasonable one on the record evidence. *See Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.") (citations omitted).

Since its post-hearing brief before the Commission, Sweet Harvest has rested its position on this issue on the assertion that "importers . . . sold off much of their inventory" obtained during the post-petition period after suspension. Sweet Harvest Opening Br. at 37; *Views*, at *30. But, as the Trade Court recognized, the Commission found significant deficiencies even in Sweet Harvest's evidence on this point. *Views*, at *30 n.306; J.A. 542 n.306; *see Sweet Harvest*, 669 F. Supp. 3d at 1357–58 (quoting much of n.306). The Commission also made clear that Sweet Harvest's focus just on the inventory of "importers" was too

narrow, as inventories by purchasers mattered too, and the overall "large" inventories would diminish demand for new purchases, especially given the Commission's finding that demand for raw honey was "relatively inelastic." *Views*, at *29 & n.305.

In light of what the Commission said and cited, we do not find this to be a case in which there is a failure to discuss evidence of such critical importance to the fact in dispute that we cannot discern the agency's reasoning or cannot find the agency's findings of fact to be reasonable without more explanation. That is so even as to the sole statutory factor on which Sweet Harvest presents an argument—a "rapid increase in inventories of the imports." 19 U.S.C. § 1673d(b)(4)(A)(ii). And it is even more so given that this is only one factor in the overall analysis in support of the finding of likely serious undermining of the remedial effect of the antidumping-duty order at issue.

We conclude that the Commission had and identified reasonable bases in the record for the findings challenged by Sweet Harvest. Substantial evidence thus supports the Commission's critical-circumstances determination.

## III

For the foregoing reasons, we affirm the Court of International Trade's decision.

**AFFIRMED**